UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
RIVKA HALPERIN
on behalf of herself and
all other similarly situated consumers

                          Plaintiff,


            -against-


NORTHSTAR LOCATION SERVICES, LLC

                          Defendant.

---------------------------------------------------------

## CLASS ACTION COMPLAINT

### *Introduction*

1.      Plaintiff Rivka Halperin seeks redress for the illegal practices of Northstar Location

Services, LLC, ("Northstar") concerning the collection of debts, in violation of the Fair

Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA").

### *Parties*

2.      Plaintiff is a citizen of the State of New York who resides within this District.

3.      Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA, in that

the alleged debt that Defendant sought to collect from Plaintiff is a consumer debt.

4.      Upon information and belief, Defendant's principal place of business is located in

Cheektowaga, New York.

5.      Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by

consumers.

6.      Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. §

1692(a)(6).

### *Jurisdiction and Venue*

7.    This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. §

       1331.

8.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions

       that give rise to this action occurred, in substantial part, in this district.

### *Allegations Particular to Rivka Halperin*

9.    Debt collectors like Defendant Northstar use the credit reporting mechanism as a tool to

       persuade consumers to pay their debts, just like dunning letters and telephone calls.

       "[C]redit reporting is one of the most commonly taken steps in debt collection efforts."[1]

10.   The purpose of the credit reporting system is to both pressure and reward consumers to

       timely pay their debts by denying them good credit if they fall behind and allowing them

       good credit if they keep up.

11.   The difference between a good and bad credit rating may fundamentally alter the financial

       outlook of individuals and families.

12.   The widespread use of credit reporting, not only by financial companies but also by

       insurers, landlords, and employers, has effectively turned credit reporting into a broadly

       yet all too often <u>abused</u> tool for collection.

13.   "A creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed,

       in part, to wrench compliance with payment terms from its cardholder".[2]

14.   If debt collectors could just report all types of debt including erroneous, non-existent or

       disputed debts to the credit bureaus then any such free reign of credit reporting would

---

[1] <u>Koller v. West Bay Acquisitions, L.L.C.</u>, 2012 WL 1189481, at *5 (N.D. Cal. Apr. 9, 2012).
[2] <u>Rivera v. Bank One</u>, 145 F.R.D. 614, 623 (D.P.R. 1993).

enable debt collectors to effectively ruin all non-paying debtors' credit, regardless of the disputed nature of the debt.

15.     This capability, had it existed would no doubt turn all debt collector credit reporting into an effective tool of blackmail regardless of the debt's actual validity.

16.     It is self-understood that had such a powerful extortion tool existed in a debt collector's arsenal. it would give the debt collector a level of leverage that is frightfully abusive and it would succeed in extracting payment from all debtors regardless of the debt's actual validity.

17.     For this reason, Congress has placed substantial limits on the credit reporting collection tool.

18.     Under the FDCPA, debt collectors cannot hijack a debtor's credit and they certainly cannot hold a debtor's credit hostage if the debt is disputed.

19.     Debt collectors frequently will threaten to harm the consumer's credit as a cost-effective way to coerce payment of any debt.

20.     However, the FDCPA requires that debt collectors advise the consumers, whose debts they seek to collect, of specified dispute rights which congress instituted with the FDCPA.

21.     The FDCPA also prohibits a debt collector from unilaterally determining the validity of any debt or dispute.

22.     The dispute rights afforded by the FDCPA just require oral or written notification of a dispute by the debtor and do not hinge on the debtor's reason for the dispute, rather the FDCPA's dispute rights give the debtor the absolute and unequivocal right to contest or dispute any debt.  See. Mendez v. M.R.S. Assoc., 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004). (A consumer is entitled to dispute the validity of a debt for a good reason, a bad

reason, or no reason at all), <u>Whitten v. ARS National Servs. Inc.</u>, 2002 WL 1050320 *4 (N.D. 111 May 23, 2002). (Imposing a requirement that a consumer have a `valid' reason to dispute the debt is inconsistent with FDCPA)

23.     These statutory rights protect the debtor from becoming the victim of a grueling cross-examination by the debt collector, who would be inquiring as to the nature of the dispute and would unilaterally subject the debtor to a self-governing interrogation, deliberation and determination as to the disputes validity as well as the debtor's guilt or innocence.

24.     Congress has identified as harmful, the failure to report a disputed debt as disputed, and, the wisdom of that policy choice which requires debt collectors to accurately report that a consumer raises a dispute does serve a purpose, and a critical one.

25.     When a debt collector reports to a credit reporting agency that a debt is disputed, that notation of dispute will be reflected in the consumer's credit report; however, the report will not be so notated simply because the consumer has submitted a dispute with the credit reporting agency.

26.     Therefore, only a debt collector-acknowledged dispute informs other creditors who view the consumer's report of the dispute and thus allows them to take the dispute into consideration when evaluating the consumer for credit granting purpose.

27.     Most importantly, credit scoring models take a dispute reported by the furnisher into consideration, and <u>*they ignore any debt that the furnisher has marked as disputed.*</u>[3]

---

[3] The Fourth Circuit noted this fact in *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 146-47 (4th Cir. 2008), finding that "if BB & T had [reported the debt as disputed], Trans Union would have reported both the debt and the dispute and would not have considered the debt in determining Saunders' total credit score. Thus, BB & T's decision to report the debt but not the dispute resulted in a much lower credit score for Saunders than a report of both the debt and the dispute."

*28.*   During the pendency of a dispute, the credit scoring models will not take negative information into account in calculating the credit-score if the account is disputed.[4]  See. *FTC and FRB, Report to Congress on the Fair Credit Reporting Act Dispute Resolution Process 22, n.139 (2006)*[5] (citing e-mail from Fair Isaac stating that its scoring models do take into consideration that an item is subject to a dispute that is being investigated), available at *www.ftc.gov.*

*29.*   However, this is only true if the debt collector, not the consumer, reports that the information is disputed.  See <u>Saunders v. Branch Bank & Trust Co.</u>, 526 F.3d 142 (4th Cir. 2008). (when a furnisher reports an ongoing dispute by the consumer, TransUnion does not include the disputed information in assessing the consumer's credit score)

30.   Debt collectors like Northstar have recognised that when debtors exercise the dispute rights afforded them by the FDCPA, it throws a proverbial wrench into their unregulated and self governed use of the - credit reporting - weapon of mass-extortion.

31.   Under the FDCPA, "[O]nce a debt has been disputed, a debt collector cannot communicate the debt or consumer's credit information to others without disclosing the dispute... The right to dispute a debt is the most fundamental of those set forth in [the FDCPA], and it was reasonable to ensure that it could be exercised [orally] by consumer debtors who may have some difficulty with making a timely written challenge. Such debtor consumers would also undoubtedly benefit from ... <u>having the fact of the dispute reported whenever the debt collector communicates with others about the debt, in accordance with § 1692e(8)</u>"[6]

---

[4] See, e.g., <u>Toliver v. Experian Info. Solutions, Inc.</u>, 973 F. Supp. 2d 707, 711–12 (S.D. Tex. 2013) ("[w]hen the dispute notations were removed, however, Toliver's credit score declined significantly. . . . [w]hen the dispute notation was added back, her credit score increased significantly.")
[5] (www.ftc.gov/os/comments/fradispute/P044808fcradisputeprocessreporttocongress.pdf)
[6] <u>Hooks v. Forman, Holt, Eliades & Ravin, L.L.C.</u>, 717 F.3d 282 (2d Cir. 2013).

32.   "Collector's must communicate that a debt is disputed.  The FDCPA does not give debt collectors the authority to determine unilaterally whether a dispute has merit."[7]

33.   Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged consumer debt from the Plaintiff.

34.   The debt was purportedly owed to American Honda Finance Corp. ("Honda").

35.   The Plaintiff was informed by the Defendant, that if she would pay the account in full, the said account would not be reported to the credit bureaus as negative.

36.   Instead of opting for a settlement that the Defendant had offered, in order to prevent it from "hitting" her credit, she agreed to make a payment for the full balance owed.

37.   Plaintiff even received a letter from Defendant dated June 16, 2020, (see attached Exhibit) confirming receipt of her final payment, and stating that she now had a balance of $0.00 on the Honda account.

38.   Yet despite making full payment towards the balance, the account was subsequently reported by the Defendant to the credit bureaus as late.

39.   As the Plaintiff no longer owes a balance to Honda, the balance that Defendant was seeking to collect was therefore non-existent; Defendant made the Plaintiff believe that she in fact owed such an amount to Honda when it was not the case.[8]

40.   The Defendant deceptively engaged in the collection of an invalid debt purportedly owed by the Plaintiff.

41.   Section 1692e of the FDCPA states:

---

[7] Semper v. JBC Legal Group, 2005 WL 2172377 (W.D. Wash. Sept. 6, 2005).

[8] Vangorden v. Second Round, L.P., 897 F.3d 433 (2d Cir. 2018). Consumer stated a claim under §§ 1692e(2), 1692e(10), and 1692f(1) when she alleged that a collection letter falsely stated that she owed a debt and then requested payment on the alleged debt. Rejecting an argument by the collector that § 1692g shielded it from liability, the Second Circuit held that "nothing in the text of the FDCPA suggests that a debtor's ability to state a § 1692e or § 1692f claim is dependent upon the debtor first disputing the validity of the debt in accordance with § 1692g." Finally, the court concluded that a letter misstating "the very existence" of a debt can mislead the least sophisticated consumer regardless of the intent of the collector.

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of --

(A) the character, amount, or legal status of any debt."

42.     Section 1692(f) of the FDCPA states:

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

43.     Defendant misrepresented the legal status of the alleged debt, as the debt was not owed by the Plaintiff.[9]

44.     Furthermore, shortly after receiving the Defendant's initial communication letter, the Plaintiff notified the Defendant in writing, via United States Postal Service, that she was disputing the alleged debt and requested verification.

45.     Section 1692g(b) of the FDCPA states that if a consumer notifies a debt collector in writing, within thirty (30) days after receipt of an initial communication from a debt collector that the debt is disputed, the debt collector must cease collection of the debt until

---

[9] See Lee v. Kucker & Bruh, LLP, 2013 U.S. Dist. LEXIS 110363, 2013 WL 3982427 (S.D.N.Y. Aug. 2, 2013). ("Defendants argue that they are not liable for violating the FDCPA because they did not know that they were misrepresenting that Mr. Lee's account was delinquent. ([Footnote 1] Defendants rely on the decision in Stonehart v. Rosenthal, No. 01 Civ. 651, 2001 U.S. Dist. LEXIS 11566, 2001 WL 910771, at *6 (S.D.N.Y. Aug. 13, 2001) (holding that to "state a claim under § 1692e(2) of the FDCPA, [the plaintiff] must show that [the debt collector] knowingly misrepresented the amount of the debt"), and similar district court cases inside and outside this circuit. These cases, however, are at odds with binding Second Circuit precedent.), See also Goldman v. Cohen, No. 01 Civ. 5952, 2004 U.S. Dist. LEXIS 25517, 2004 WL 2937793, at *10, n.11 (S.D.N.Y. Dec. 17, 2004), aff'd on other grounds, 445 F.3d 152 (2d Cir. 2006). (concluding that analysis in Stonehart contradicts the plain language of 1692e(c) and the law as stated by the Second Circuit). This argument is contrary to binding Second Circuit precedent. The Defendants here are strictly liable for their violation of § 1692e. This Court holds that the misrepresentation in the Three Day Notice, the Verification and the Petition for summary nonpayment eviction of a debt supposedly owed by Mr. Lee for rent and fuel charges, when in fact he was current on his payments, is a violation of § 1692e(2)(A)."), Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, No. 16-2165-cv, 2017 BL 407422 (2d Cir. Nov. 14, 2017). ("[S]ection 1692f contains a non-exhaustive list of unfair practices, including the collection of an invalid debt."))

the debt collector obtains verification and provides a copy of such varication to the consumer.

46. The Plaintiff had been disputing this debt since its inception, and before the Defendant even began to collect upon it.  Northstar knew about the disputed nature of the debt when it received the debt from the Creditor.

47. The Defendant was notified of the dispute in writing yet failed to notate the dispute.

48. Each and every notification of the debt's disputed status mandated that the Defendant report the disputed nature of the debt to the credit bureaus.

49. The Defendant, despite having received the Plaintiff's written dispute, nonetheless continued to illegally report this debt to the Credit Bureaus and therefore significantly damaged the Plaintiff's credit report.

50. Upon information and belief, when re-reporting the debt with the credit bureaus, the Defendant failed to report the disputed debt as disputed in violation of 15 U.S.C. § 1692e(8).

51. The Defendant failed to communicate that a disputed debt is disputed, in violation of 15 U.S.C. § 1692e(8).[10]

52. The Defendant's conduct was false, deceptive, and misleading since it effectively avoided reporting the Plaintiff's dispute even after being on notice of said dispute.

53. The Defendant violated the FDCPA since it reported information about the debt that it

---

[10] Purnell v. Arrow Fin. Servs., LLC, 2007 U.S. Dist. LEXIS 7630, 2007 WL 421828 (E.D. Mich. Feb. 2, 2007). (The court stated "Congress has identified as harmful the failure to report a disputed debt as disputed, and, whatever the wisdom of that policy choice, Congress did not distinguish between communications that were intended and knowing as opposed to unintended and automatic. Indeed, the "directly or indirectly" language of Section 1692a(2) suggests that Congress saw no difference between the two. From the perspective of a consumer disputing a debt, it similarly matters not how it is that a dispute marker is lost. The harm inheres in the simple fact that information about an apparently undisputed debt in that person's name exists in the credit reporting industry, which can have untold negative consequences for people who engage in commerce.")

knew to be false at the time that the reporting was made.[11]

54.  The Defendant failed to cease communications to the Plaintiff regarding the alleged debt, in violation of 15 U.S.C. § 1692c(c).

55.  Defendant's actions violated 15 U.S.C. §§ 1692e, 1692e(8), 1692g(b) and 1692c(c) for engaging in false and deceptive means, for the failure to report a disputed debt as disputed, for failing to cease collection of the debt upon receipt of the Plaintiff's written dispute, and for failing to cease communications to the Plaintiff.

56.  Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the Defendant.

57.  Plaintiff suffered actual harm by being the target of the Defendant's misleading debt collection communications.

58.  Defendant violated the Plaintiff's right not to be the target of misleading debt collection communications.

59.  Defendant violated the Plaintiff's right to a truthful and fair debt collection process.

60.  Defendant used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

61.  Defendant's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendant's collection efforts.

62.  The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the

---

[11] See Janjua v. Ocwen Loan Servicing LLC, 1:14-cv-06303-CBA-JO (E.D.N.Y. Feb. 26, 2016). (Bagley, J.) ("[T]he plain language of 1692e(8), indicates that a debt collector violates this provision if it communicates information about a debt that it knows or should know to be false at the time the communication is made.")

FDCPA is to provide information that helps consumers to choose intelligently. The Defendant's false representations misled the Plaintiff in a manner that deprived her of her right to enjoy these benefits, these materially misleading statements trigger liability under section 1692e of the Act.

63. These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

64. As an actual and proximate result of the acts and omissions of the Defendant, Plaintiff has suffered including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment for which she should be compensated in an amount to be established by a jury at trial.

## AS AND FOR A CAUSE OF ACTION

*Violations of the Fair Debt Collection Practices Act brought by Plaintiff on behalf of herself and the members of a class, as against the Defendant.*

65. Plaintiff re-states, re-alleges and incorporates herein by reference, paragraphs one (1) through one sixty-four (64) as if set forth fully in this cause of action.

66. This cause of action is brought on behalf of Plaintiff and the members of a class.

67. The class consists of all persons whom Defendant's records reflect resided in the State of New York who communicated with Defendant's representatives within one year prior to the date of the within complaint up to the date of the filing of the complaint; (a) Defendant attempted to collect on a non-existent debt; and (b) when reporting the debt with the national credit bureaus, Defendant failed to report the disputed debt as disputed; and (c) the Defendant made false statements in violation of 15 U.S.C. §§ 1692e(2)(A), 1692e(3), 1692e(5), 1692e(8), 1692e(10) and 1692f(1).

68.   Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

    A.   The class is so numerous that joinder of all members is impracticable, though the precise number of class members may be known only to the Defendant. Plaintiff estimates that each class has thousands of members.

    B.   There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. The principal question presented by this claim is whether the Defendant violated the FDCPA.

    C.   The only individual issue is the identification of the consumers who observed such language in their credit reports, furnished by the Defendant to the credit bureaus (*i.e.* the class members), a matter capable of ministerial determination from the records of Defendant.

    D.   The claims of the Plaintiff are typical of those of the class members. All are based on the same facts and legal theories.

    E.   The Plaintiff will fairly and adequately represent the class members' interests. The Plaintiff has retained counsel experienced in bringing class actions and collection-abuse claims. The Plaintiff's interests are consistent with those of the members of the class.

69.   A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. § 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

70.    If the facts are discovered to be appropriate, the Plaintiff will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

71.    Collection attempts, such as those made by the Defendant are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

### *Violations of the Fair Debt Collection Practices Act*

72.    The Defendant's actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

73.    Because the Defendant violated the Fair Debt Collection Practices Act, the Plaintiff and the members of the class are entitled to damages in accordance with the Fair Debt Collection Practices Act.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendant and award damages as follows:

A.    Statutory and actual damages provided under the FDCPA, 15 U.S.C. § 1692(k);

B.    Attorney fees, litigation expenses and costs incurred in bringing this action;

C.    Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Woodmere, New York
July 6, 2020

_____/s/ Adam J. Fishbein_____
Adam J. Fishbein, P.C.  (AF-9508)
Attorney at Law
**Attorney for the Plaintiff**
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com

Plaintiff requests trial by jury on all issues so triable.

_____/s/ Adam J. Fishbein____
Adam J. Fishbein (AF-9508)

4285 Genesee Street
Cheektowaga, NY 14225-1943

Return Service Requested

**NORTHSTAR LOCATION SERVICES, LLC**
Hours Monday-Friday 8AM-8PM ET

Payment website:  https://www.gotonls.com
Toll free:  1-866-677-2579
Facsimile:  716-565-6928

6/16/2020

RIVKA HALPERIN
28 HIGH MOUNTAIN RD
POMONA, NY 109702125

Creditor:  American Honda Finance Corporation
Account #:  *************9419
Reference #:  3567668
Balance:  $0.00

We are an authorized representative for American Honda Finance Corporation.  This letter is to confirm receipt of your final payment of $6,565.96, received on 6/16/2020.  Upon clearance of funds, the above-mentioned account will be closed as paid in full.

If you have any questions regarding your account, please contact our office toll free at 1-866-677-2579.

This communication is from a debt collector and is an attempt to collect a debt.  Any information obtained will be used for that purpose.

Sincerely,

Northstar Location Services, LLC

NOTICE: PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION



ACA
INTERNATIONAL
The Association of Credit
and Collection Professionals
*Member*